Paul K. BROWNE, Sr., Plaintiff,
Appellant,

v

Elliot L. RICHARDSON, Secretary of
Health, Education and Welfare,
Defendant, Appellee.

No. 72–1191.

United States Court of Appeals,
First Circuit.

Argued Sept. 12, 1972.

Decided Nov. 2, 1972.

James M. McDonough, Boston, Mass.,
for appellant.

Paul F. Ware, Jr., Asst. U. S. Atty.,
with whom Joseph L. Tauro, U. S. Atty.,
was on brief, for appellee.

Before COFFIN, Chief Judge, Mc-
ENTEE, Circuit Judge, and HAMLEY,*
Senior Circuit Judge.

COFFIN, Chief Judge.

This is an appeal from the district
court's order granting the defendant
Secretary's motion for summary judg-
ment because it found the Secretary's
decision, that the plaintiff was not en-
titled to disability benefits, was support-
ed by substantial evidence on the record
as a whole.

On April 12, 1967, plaintiff first ap-
plied for disability benefits. In that
application his response to the form
question "When did you become unable
to work because of your disability" was
"Oct. 3, 1966." In answer to other ques-
tions he said that he was in the real es-
tate and mortgage business both in 1967
and the two prior years and that al-
though he had no earnings in 1967, his

* Of the Ninth Circuit, sitting by designation.

total earnings for the prior year were $2,000.[1] His claim was denied because he did not meet the insured status requirement of 42 U.S.C. § 423(c)(1)(B)(i) during or after the calendar quarter in which he claimed to have become disabled. On October 3, 1968, he filed a second application for disability benefits, this time answering the question as to disability with the year "1964", not indicating any occupation, and showing no earnings in either that or the prior year. This application was denied on April 10, 1969 because it was determined that his condition was not disabling on any date from March 31, 1964 through June 30, 1965, the last day on which he met the insured status requirement. On his request, his claim was reconsidered and, following evaluation of the claim by a physician and state disability examiner, again denied. At the claimant's request a hearing was then held at which he was represented by counsel. The only witnesses were the claimant and his wife, a professional nurse. The Hearing Examiner also received documentary evidence, most significantly hospital records and the reports of three doctors, Dr. Murray, the claimant's personal physician, Dr. W. E. Stevens, a radiologist who treated the plaintiff after October 1966, and Dr. Louis Goodman, a surgical consultant to the Social Security Administration who never examined claimant but reviewed the medical reports. After the Examiner's decision disallowing the claim, plaintiff requested a review by the Appeals Council, which was denied on October 30, 1970. Plaintiff then filed this suit.

The evidence revealed the following undisputed facts. Plaintiff was admitted to a hospital on November 13, 1960 for surgical removal of a tumor which proved to be a malignant lymphosarcoma,

Hodgkin's disease. X-ray therapy was administered for some months following discharge. He was again admitted to a hospital on October 2, 1966 for removal of a malignant tumor, after which he was given cobalt treatment by Dr. Stevens. On April 16, 1967 he was again hospitalized, again for removal of a malignant tumor. Finally he was admitted to a different hospital in July 1968 for a thorough two-week examination which again resulted in a diagnosis of lymphosarcoma and a recommendation of radiation therapy.

Dr. Murray, the claimant's personal physician throughout the critical period, submitted two written reports, in one of which he concluded that the claimant has been "totally and completely incompacitated [sic] from work because of his malignant lymphosarcoma and symptoms referrable thereto since March 1962 until the present time." He noted that:

"The patient was followed clinically [after the 1960 operation] and for a period of time in 1963 and 1964 a history of pain in the left lower quadrant was evaluated with apprehension."

Pursuant to a request of the Hearing Examiner Dr. Murray also sent a record of the claimant's office visits from December 1960 to August 1964. As early as September 1961 and at several times thereafter, a notation was made of tenderness in the left lower quadrant, where the tumor removed in 1966 was located.

Plaintiff testified at the hearing that up to 1960 he had a large and thriving real estate and mortgage business, that after his 1960 operation things started to go downhill, that he closed his office in 1962 when the lease expired, that he earned no income after that time, that when their savings ran out his wife went back to work in 1964, that he was totally exhausted and unable to work from 1962 to 1965, and that he has not worked since

---

1. This statement was first urged by the government as evidence of plaintiff's having worked in the years prior to 1967. It is now conceded that, as indeed plaintiff testified, this amount could as well have referred to income from stocks, bonds, and real estate. Indeed, the receipt of such a low figure during an entire year suggests such investment income rather than the receipt of brokerage commissions.

1962. His wife testified substantially to the same effect.[2]

The only adverse medical evidence consisted of two medical reports. The first was the report by Dr. Stevens who first examined plaintiff in October 1966 and who filled in the form box for "Date Impairment Prevented Work" with the date "9/28/68". The record made available to us reveals no reason why that particular date was given. The second report is that of Dr. Goodman, the medical consultant, who reviewed the medical evidence as of February 1969, when he filed his report, and concluded that:

> "If no further medical evidence can be brought to bear by his treating physicians prior to 1965 to document the presence of pulmonary or abdominal evidence of the lymphosarcoma, then the onset date of a severity of medical impairment to preclude any work activity at some point subsequent to his discharge from the Mercy Hospital on 4–24–67 when the disease was apparently still confined to a few peripheral lymph nodes will stand."

The Hearing Examiner disallowed the claim primarily because he thought that Dr. Murray's specific clinical findings did not substantially support his conclusion of disability, 20 C.F.R. § 404.1526; that the claimant did not supply sufficient evidence that he was not gainfully employed in the relevant period; and because he could not believe claimant's statement that he in effect slept through most of four years. The Appeals Council affirmed the decision after considering "all the evidence" in the record.

All now agree that June 30, 1965 was the last date on which plaintiff met the insured status requirement of § 423(c)(1)(B)(i) which requires social security credits for 20 quarters of work during the 40 quarter period ending in the quarter in which disability is claimed. The only question is whether he established his disability as of that date. The government contends that three pieces of evidence supply the substantial evidence necessary to support the Secretary's finding. First, and claimed at argument to be most compelling, is the claimant's own statement in his first application that he first became incapable of working on October 3, 1966. There was no meaningful examination exploring why plaintiff assigned the date he did to the commencement of his disability. All we know is that he filed his application four days before his third tumor removal operation was scheduled; that he gave the memorable and dramatic date of his next prior major operation six months earlier. We note first the inherent unlikelihood of such a date coinciding with the commencement of disability. The uncontested history of plaintiff's illness is that of a long-continued and progressive one, with repeated operations. Only if the second operation dramatically blocked his functioning could it have signalled the beginning of his incapacity. We further observe that plaintiff, at the time he filed his 1967 application, had for. months been suffering the debilitating effects of both his disease and draconian cobalt treatments. Moreover, although sympathetic with the Examiner's frustrations in attempting to pin down sources of income and duration of disability at the hearing over three years after plaintiff filed his first application, we cannot, in light of the toll presumably taken by the further progress of the illness, consider the plaintiff's inability to explain convincingly the reason for his 1967 statement as adverse evidence. We are left with the deep conviction that the

---

2. The government does not rely, as did the Examiner, on the plaintiff's failure to produce evidence of his lack of work and earnings during the four years ending in June 1965. It is difficult to prove a negative fact, other than by oral testimony or comparison to positive evidence in other periods. Here the plaintiff testified as to his inability to work and lack of earnings in the relevant periods and his statement of earnings covering the period 1950–69 shows exact figures for 1951–59 and 1961 and nothing for 1960 and 1962–69. He testified that he filed no income tax returns in those later years.

plaintiff's solitary, unexplained, and unlikely first designation of date of his disability, while perhaps "some" evidence, cannot fairly be relied upon as either the principal basis for denial of the claim or as evidence substantial enough to make a minimum case when conjoined with even less adequate evidence.

We now consider the remaining evidence, which is medical in nature. We start with the proposition, accepted by the Examiner and apparently also by the counsel for the government, that if the medical evidence presented by the claimant is not controverted by substantial medical evidence, the Examiner may not reject the claim on medical grounds. Teeter v. Flemming, 270 F.2d 871, 874 (7th Cir. 1959); Celebrezze v. Warren, 339 F.2d 833, 838 (10th Cir. 1964). The Examiner, however, rested on the ground that Dr. Murray's conclusion was not adequately buttressed by specific clinical findings. Wisely the government does not now pursue that line. Although Dr. Murray's submissions are admittedly not as detailed as would be desirable, they do provide a record of specific clinical findings at every physical examination over a period of four years along with two reports describing the patient's history and general findings and conclusions. The government now claims there is substantial contrary medical evidence: Dr. Stevens' conclusion that disability did not arise until September 28, 1968 and the surgical consultant's report.

Dr. Stevens first saw this plaintiff in October 1966, more than 15 months after the last relevant date for disability benefits. His brief report gives no explanation for the specific date noted as the moment of disability. See Walker v. Richardson, 339 F.Supp. 772 (W.D.Mo. 1972). It merely states the nature of the disease and the highlights of the treatment history. Although his conclusion that the plaintiff was not disabled until 1968 does have some relevance to the issue of disability in 1964 and 1965, the lack of clinical findings to support that conclusion and the fact that Stevens never saw the patient in the critical period render the statement far less than substantial contrary medical evidence.

Dr. Goodman is a medical adviser who never examined the plaintiff but merely reviewed the written medical evidence and filed a written report. The use of both written medical reports and medical advisers was challenged in Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Supreme Court there first held that written reports by physicians who have examined the claimant are admissible and may also constitute substantial evidence supportive of an adverse finding, when the claimant has not exercised his right to subpoena the doctors. Id. at 402, 91 S. Ct. 1420. It then went on to discuss the use of medical advisers *who testify* at hearings and held:

"We see nothing unconstitutional or improper in the medical adviser concept and in the presence of Dr. Leavitt in this administrative hearing." *Id.* at 408, 91 S.Ct. at 1431.

It is not at all clear whether the Court thereby also held that such an adviser's testimony could constitute substantial evidence. *See* Gunter v. Richardson, 335 F.Supp. 907 (W.D.Ark.1972), and Collins v. Richardson, 334 F.Supp. 1333 (D.S.C. 1971). But we need not resolve that problem here for we face a very different situation from *Perales*. Dr. Goodman here neither examined the claimant nor testified at the hearing. His report thus lacks the assurance of reliability that comes on the one hand from first-hand observation and professional examination or, on the other, from first-hand testimony subject to claimant's cross-examination. It is hearsay based on hearsay. Thus, although the report may be admissible in light of *Perales*, it cannot be the substantial evidence needed to support a finding. Moreover, whatever weight it should be accorded is here substantially diminished because the consultant wrote the report before Dr. Murray supplied his record of office visits showing the symptoms during the pre-1965 period. This is significant because the consultant specifically conditioned his conclu-

sion as to the onset of disability on the absence of such further medical evidence.

We conclude, then, that none of the individual pieces of evidence are substantial evidence to support the Examiner's findings. Nor can we say that when these meager scraps are gathered together the total pile may be called substantial.

Summary judgment for defendant reversed; case remanded for entry of summary judgment for plaintiff.