Luis GUZMAN DIAZ, Plaintiff,
Appellant,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE,
Defendant, Appellee.

No. 79-1318.

United States Court of Appeals,
First Circuit.

Submitted Nov. 9, 1979.

Decided Jan. 25, 1980.

Wilfredo Rodriguez-Mercado, Puerto Nuevo, P. R., on brief, for plaintiff, appellant.

Jose A. Quiles, U. S. Atty., San Juan, P. R., and Ramon L. Walker Merino, Asst. U. S. Atty., Hato Rey, P. R., on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The question on this appeal is whether the Secretary's determination that claimant was not under a disability[1] on or before September 30, 1970 when his coverage for

disability insurance purposes expired is supported by substantial evidence on the record considered as a whole. Even the Secretary's expert medical witness agrees claimant has been disabled since 1975 because of schizophrenia, and thus the principal issue is the onset date of claimant's disability.

Claimant filed an application for disability insurance benefits on April 18, 1975 alleging he had been disabled since 1969 due to a nervous condition, back pain, and visual difficulties. The Secretary's determination that neither the back nor the eye problems were of a disabling nature is clearly supported by substantial evidence;[2] the only issue of legal consequence is claimant's mental condition. Claimant first complained of nervousness in 1951 while he was in active military service and sedatives were prescribed. In March 1953, about three months after his honorable discharge, claimant went to Dr. Rivera, whose speciality was dermatology, and complained of nervousness, fear, episodes of depression, insomnia and, at times, aggressiveness. Dr. Rivera's initial diagnostic impression was "Active Psychosis," "R.O. [rule out] Schizophrenia." With claimant's third visit in October 1953 the diagnostic impression changed to schizophrenia. Claimant did not return to Dr. Rivera, however, until February 1971 and then once again in February 1975. On the latter occasion, Dr. Rivera reported little or no improvement in claimant's condition.

From 1955 to 1966 claimant, while not steadily employed, did work in a number of positions, changing jobs often. He was not employed after 1966.

From 1968 to 1971 claimant was treated by Dr. Jimenez, who was not a psychiatrist. Dr. Jimenez initially supplied a brief statement, dated November 10, 1975, setting

---

1. Disability is defined as

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .."
42 U.S.C.A. § 423(d)(1)(A).

2. Claimant's poor vision in one eye precludes him from performing tasks which require good binocular vision. His back condition also imposes other strictures but claimant, apart from his schizophrenia, is capable of doing light and sedentary jobs such as salesperson, *i. e.,* order taker, shipping clerk, and factory machine operator in the food processing industries.

forth his conclusion that claimant had been totally and permanently unfit for work since 1970.[3]

In 1974 claimant consulted Dr. Santiago, a psychiatrist, who reported as follows: "[Claimant] is somewhat dreamy and misunderstands simple questions which have to be constantly repeated. . . . [H]e speaks in a logical and coherent fashion but is confused, disorganized and disoriented in time but not in place and person.

. . .

"His judgment is poor, rather impulsive and the patient is insecure apparently having serious difficulties with his abstraction. His intellect impresses as being below par most likely because of his tendency to be concrete. . . .

"Introspection is nil and affect is one of tenseness, depression and little involvement with his sorroundings [sic]."

Dr. Santiago gave a diagnostic impression of

"1. Schizophrenic Reaction—Partial Remission.

2. R/O Epileptic Equivalent."

Under the heading "Comments," Dr. Santiago stated that "in 1969 [claimant] stopped being employable.[4] At present he is suffering from a full blown schizophrenia."

Claimant submitted a report dated March 10, 1976 from Dr. Vigoreaux, a psychiatrist, who traced claimant's psychiatric history back to his military service. Dr. Vigoreaux stated,

"[Claimant's] [c]ourse of psychiatric illness [after his March 1953 visit to Dr. Rivera] revealed marginal functioning and recurrent crisis of mental instability suggestive of chronic schizophrenia. Due to gradual aggravation of mental condition, [claimant] became occupationally disabled around 1966. By this time (1965–1966) he worked as salesman for the Metropolitan Home Improvement Co.

He absented from work frequently, had episodes of absent mindedness, felt that he could not concentrate or perform satisfactorily and at times he could not even drive his automobile due to mental confusion. On account of these and similar subjective symptoms compatible with psychological decompensation, he resigned from work. No gainful productive endeavor since then.

. . . . .

In spite of the fact that [claimant] attempted to perform occupationally, the schizophrenic symptoms were present all the time causing frequent changes of work and poor productivity. Eventually in 1966 the mental condition rendered this man occupationally disabled and in need of continued psychiatric treatment."

Dr. Vigoreaux's opinion as to the date claimant became disabled was based on a review of claimant's medical records and history.

Other medical evidence relevant to claimant's current disabled status but not particularly helpful as to the onset date was also submitted.

Claimant testified he stopped working in 1966 because he had frequent attacks, tremors, frights, and severe headaches during which he would lose consciousness. These occurred two or three times a day. His wife elaborated that when claimant experienced tremors he would close himself in the bathroom, and she described other aspects of his behavior. At night he would sometimes scream or turn on all the lights and play the radio loudly. He was forgetful, aggressive, and destructive, and had attacked both her and his children. He did not relate well to other people, she stated, and refused to return his neighbors' greetings as it bothered him to be spoken to. His nervousness and abnormal behavior had been noticed by one of his bosses who had spoken to her about it.

---

**3.** Dr. Jimenez's one-page certificate stated that claimant had been his patient since February 1968, listed medications prescribed, and concluded: "There has been no improvement in [claimant's] condition. Pt. at present total & permanent unfit for work since 1970."

**4.** The statement as to the date claimant ceased being employable may be an uncritical repetition of claimant's own reported history rather than an independent medical judgment.

A vocational expert, Dr. Senior, also testified. He was asked the following hypothetical by the ALJ:

"Assuming . . . that the claimant's symptomatology of . . . March, 1953, and February, 1971, and subsequently prevalent in February, 1975, were in existence during the critical period [*i. e.,* 1966 through September 30, 1970]. Under those conditions in your opinion, would the claimant have been able to be employed?"

Dr. Senior replied, "No. . . . [T]here's no question that he would not be employed . . . ."[5]

After the original disability hearing, the ALJ issued an opinion finding the medical evidence insufficient to establish that claimant's mental illness was of a disabling nature on or before September 30, 1970. The ALJ commented,

"The medical evidence is barren of symptomatic observations for an unexplained 15 year period [October 1953 to February 1971], during which the claimant was gainfully employed for 35 quarters. . . . [T]here were no findings of marked restriction of daily activities, constriction of interest, or seriously impaired ability to relate to other people or any other such observations. Without such findings it is difficult to determine the severity, much-less [sic] the presence, of an emotional disorder of a disabling nature."

The ALJ noted that no "medical finding, symptomatology, or objective observations" had accompanied the certificate of disability submitted by Dr. Jimenez, the one physician who had treated claimant during the "unexplained 15 year period." The ALJ concluded claimant had failed to sustain his burden of proof.

When this decision, after affirmance by the Appeals Council, was appealed, the district court remanded to the Secretary with instructions to seek out additional evidence to substantiate Dr. Jimenez's determination that claimant had been disabled since 1970. A supplemental hearing was held and additional information, including notes made by Dr. Jimenez on the twelve occasions from February 20, 1968 through January 3, 1971 that he treated claimant and a further certificate dated June 22, 1976 from Dr. Jimenez, was admitted into evidence. This second certificate states, in material part:

"Pt's [sic] was seen at my offices approximately every 2 mo. during 1968 and early 1969. But Pt psychiatric condition wasn't improved. Pt c frequent hallucinations, illogical delusions of persecution and hypochrondriac manifestations."

Dr. Jimenez also stated that the frequent hallucinations, illogical delusions of persecution, and hypochondriac manifestations were more severe during late 1969 and afterwards and that claimant developed negativism and destructiveness with epileptic like episodes during the last years.[6]

At the supplemental hearing the Secretary called Dr. Flores, a psychiatrist, as a witness. Dr. Flores testified that schizophrenics may have periods of exacerbation and periods of remission and, depending upon their condition during the latter, the type of job they have, and the tolerance of their supervisors, they may be able to work. Disagreeing with those doctors who were of the opinion that claimant's mental condition was disabling at an earlier time, Dr. Flores stated, after a review of claimant's medical records, that "the only indication of disability . . . [is] from . . . 1975, not before."

The ALJ concluded that claimant was not under a disability at any time prior to the expiration of his coverage for disability insurance purposes on September 30, 1970. We quote from his opinion.

---

5. From the dates specified in the hypothetical, which are the dates of treatment by Dr. Rivera, it is evident that by the term "claimant's symptomatology," the ALJ meant claimant's condition as described by Dr. Rivera. Dr. Rivera had been the first physician to diagnose schizophrenia.

6. The June 22, 1976 certificate was folded upwards when the record was reproduced with the result that the bottom portion was not photocopied. Hence, we rely on the ALJ's summary of the contents.

"Whether the claimant was disabled prior to the expiration of his disability insurance coverage depends entirely on the existence of credible and reliable evidence of the severity of his condition during the critical period. There are no medical records for this period except for the notes of Dr. Wallace Jimenez, a general physician who treated the claimant during this period. Dr. Flores Gallardo testified that from these notes and from the medication prescribed, a severe mental or a schizophrenic process could not be inferred. It was not until January, 1971, when the claimant's condition worsened and reached a level of severity, which would have precluded him from gainful activity, but that this happened after the expiration of his coverage.

.    .    .    .    .

"Prior to the expiration of his coverage for disability purposes there is *no* medical evidence to sustain a finding of the existence of a mental condition of such a level of severity as to preclude sustained substantial gainful activity. The testimony of medical witnesses at the Hearing indicated that the claimant did have the physical and mental abilities to engage in various work endeavors. The claimant's physical and mental conditions would not have impeded him in the performance of .   .   . jobs in which he would not have been placed under intensive tension or pressure, and he would not have been exposed to excessive dust, fumes or noxious odors in the work activities. The claimant is regarded as having had the physical and mental abilities during the critical period to perform the jobs enumerated by a vocational expert at the hearing.

"(4) The claimant between 1969 and 1970 complained of being nervous and anxious, but the medical evidence of record reveals that during this period he demonstrated his ability to think in a logical, coherent, and relevant manner and was oriented as to time, place, and person without any loss of his intellectual functions or abilities. Mentally he would not have been precluded from the performance of routine, repetitive, and simple work activities similar to those recommended as applicable to him by a vocational expert at the hearing during the critical period under consideration." (Emphasis added.)

■ The above findings, while in some sense supported, contain a number of errors and clear overstatements. It was plainly wrong to say, as the ALJ did, that there is "*no* medical evidence to sustain a finding of ₁ [disability]." (Emphasis added.) Claimant presented sufficient evidence from which a finding of disability, prior to the expiration of coverage, could be made. Psychiatrists Santiago and Vigoreaux indicated that claimant's disability commenced prior to 1970. Dr. Jimenez, the only physician who actually saw and treated claimant during the critical period, gave his opinion that claimant had been unfit for work since 1970 and described certain objective symptomology, namely that claimant had experienced frequent hallucinations, illogical delusions of persecution, etc., supporting his conclusion. The vocational expert indicated, without contradiction from any source, that a person whose reality testing was so impaired could not have sustained any substantial work.

To be sure, the Secretary's expert, Dr. Flores, based on his review of the records and without seeing claimant, questioned Dr. Jimenez's conclusion. Not until after 1975 did he find satisfactory evidence of disability. That the medical evidence was susceptible of different resolutions was, however, an entirely different circumstance from an absolute failure of proof of disability. In the former situation the factfinder must determine where the truth lies; in the latter, he has no such deliberative function— he cannot properly make a finding for the claimant on the record before him. The ALJ seems to have felt the latter situation pertained here, and in that respect we believe he was in error.

The ALJ may have believed that Dr. Flores' testimony so undercut the basis for Dr. Jimenez's opinion that a finding could

not, as a matter of law, be made for claimant. We disagree. Dr. Flores did not take the position that a person with the symptoms Dr. Jimenez described would not have been disabled but rather he gave three reasons for discounting Dr. Jimenez's observations and opinion: (1) Dr. Jimenez did not specifically state when claimant had had the hallucinations, delusions, etc.; (2) he did not refer claimant to a psychiatrist until January 3, 1971 (after coverage had expired); and (3) the medication he prescribed would not help a person with the described symptoms.

The first two reasons do not stand up. Dr. Jimenez's observations obviously pertain to the period during which claimant was his patient—February 20, 1968 through January 3, 1971. He stated that claimant's symptoms (*viz.,* hallucinations, delusions, etc.) were more severe during late 1969 and thereafter, thus providing a sufficient time frame. Furthermore, his notes indicate he referred claimant to a psychiatrist on February 8, 1969 as well as on January 3, 1971. Only Dr. Flores' third reason has any force. Dr. Flores testified that Dr. Jimenez's clinical notes showed that prior to January 3, 1971 he basically prescribed tranquilizers, not anti-psychotics. The prescribed medication, appropriate for treating anxiety, would not have helped a person with hallucinations, Dr. Flores said. Not until January 3, 1971 (after coverage had expired), when Dr. Jimenez administered thorazene

intramuscular, would the medication indicate that a more severe condition existed.

That the medication prescribed did not fully agree with the symptoms said to have existed could support a reasonable inference that the symptoms themselves were less severe during the critical period than Dr. Jimenez remembered.[7] Still, the disparity between medication and symptoms did not compel the conclusion that Dr. Jimenez was inaccurate when he spoke of hallucinations and delusions; other circumstances may explain the disparity. Dr. Jimenez, not a psychiatrist, was apparently a general practitioner. Whether the proper medication for persons having the symptoms Dr. Jimenez described is a matter of more or less routine knowledge or whether it is a subject upon which medical opinions may vary widely we do not know. Similarly, we do not know whether the anti-psychotics Dr. Flores feels should be administered to one experiencing the frequent hallucinations and other symptoms Dr. Jimenez described are something within the purview of a general practitioner. Dr. Jimenez did, according to his notes, refer claimant to a psychiatrist on two occasions, but claimant did not go. Not until 1975 does it appear that claimant submitted to a regular course of psychiatric treatment and that, apparently, upon the instigation of his wife.[8] Dr. Jimenez may have done the best he could under the circumstances with an unwilling or financially straited patient.[9]

7. In *Browne v. Richardson,* 468 F.2d 1003 (1st Cir. 1972), we left open whether the testimony of a medical expert who has never examined the claimant but only reviewed his medical records (as did Dr. Flores here) could constitute substantial evidence on the record as a whole to support the Secretary's decision denying disability benefits. The answer to this question will doubtlessly vary with the circumstances, including the nature of the illness and the information provided to the expert. By the time claimant filed his claim in April 1975 his insured status had been expired for approximately four and one half years. An examination of claimant in 1975 would have been of little, if any, help in determining when his schizophrenic condition became disabling and thus the fact that Dr. Flores did not conduct his own examination of claimant does not, under the circumstances, preclude Dr. Flores' testimony from

constituting substantial evidence to support a finding of no disability.

8. In February 1975 claimant was admitted to the psychiatric ward of a hospital. The doctor's progress notes state that claimant's wife brought him to the emergency room complaining that claimant had, for the past two weeks, been very restless, anxious, and aggressive toward himself and her. He had attempted to hang himself in his bathroom and had, on the day claimant was admitted, struck her. The notes state that the wife was scared of claimant.

9. When asked by the ALJ why she had not earlier taken claimant to the Veterans Administration to be treated for his nerves, claimant's wife said that because claimant's condition was not service-connected the Veterans Administra-

Thus, the record as it now stands leaves a number of unanswered and troubling questions. Dr. Flores' own inaccuracies as to Dr. Jimenez's report and the ALJ's possible belief that claimant could not prevail as a matter of law leave it unclear to what extent the ALJ's ultimate finding was infected by these errors. And it remains uncertain what significance to attach to the fact that Dr. Jimenez treated a person having the symptoms he described with tranquilizers. Clarification of this latter point would, in particular, aid in a just determination of this matter. We therefore vacate the judgment of the district court and remand to the Secretary for a second time. The Secretary should reopen and review claimant's disability claim. In particular, a further statement in explanation of claimant's treatment should be obtained from Dr. Jimenez, and the Secretary should determine anew whether in light of that statement, any other new evidence, and all existing evidence of record, claimant's disability did or did not commence within the relevant period.

We make a further comment on the last quoted paragraph of the ALJ's findings. The ALJ there stated, incredibly we think, that the medical evidence reveals that between 1969 and 1970 claimant "demonstrated his ability to think in a logical, coherent, and relevant manner and was oriented as to time, place, and person without any loss of his intellectual functions or abilities." We fail to find any evidence, much less substantial evidence in the record as a whole, to support this finding. We question whether such a conclusion could be reached by an objective factfinder. The only first-hand evidence from a physician covering the period 1969–70 is that supplied by Dr. Jimenez. This, by no stretch of the imagination, indicates that claimant thought in a "logical, coherent, and relevant manner." While Dr. Flores' testimony may have undercut Dr. Jimenez's and, if credited, could have permitted the ALJ to conclude claimant had not sustained his burden of persuasion as to disability, it certainly did not go so far as to supply affirmative evidence that claimant was functioning logically and coherently. We leave it to the Secretary to see upon further remand that all the evidence is now weighed and sifted in a balanced and even-handed manner. Both prior proceedings having been held before the same administrative law judge, the Secretary may wish to consider whether it would not be appropriate for the remanded proceedings to be held before a different judge who, whatever the eventual result, can take a completely fresh look at this obviously very close case. Cf., *Haverhill Gazette Co. v. Union Leader Corp.*, 333 F.2d 798, 808 (1st Cir.), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964).

*The judgment of the district court is vacated and the case is remanded with directions that the district court remand to the Secretary for further proceedings consistent with this opinion.*

tion would not hospitalize him. Thus, financial considerations may have influenced the course of claimant's treatment and accounted for claimant's prior lack of psychiatric treatment.