**Ernesto Del Valle TORRES, Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

No. 88–1474.

United States Court of Appeals, First Circuit.

Submitted Oct. 7, 1988.

Decided Jan. 12, 1989.

Rafael Carreras–Valle, Rio Piechas, P.R. on brief, for plaintiff, appellant.

Nancy B. Salafia and Geraldine Campinell, Asst. Regional Counsel, Dept. of Health and Human Services, Charlestown, Mass., Daniel F. Lopez Romo, U.S. Atty., and Jose B. Blanco, Asst. U.S. Atty., Hato Rey, P.R., on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

PER CURIAM.

The claimant, Ernesto Del Valle Torres, has appealed a district court judgment, which affirmed a decision of the Secretary of Health and Human Services (the Secre-

tary) denying the claimant's application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 401 *et seq.*, (the Act). We affirm.

The claimant alleged disability primarily due to a visual impairment caused by cataracts. The claimant applied for benefits on March 20, 1986, alleging he had been disabled since November 30, 1984. The claimant is 60 years of age, attended school through the ninth grade, and previously had worked for at least fifteen years as a waiter. His earnings record indicates that he worked through 1980 and then for a brief period in 1982. (Transcript, hereinafter "Tr.", at 64.) He also worked for approximately six months in 1984 as a carpenter's helper.

The administrative law judge (ALJ) determined that the claimant has severe bilateral surgical aphakia[1] and bilateral amblyopia.[2] The ALJ further concluded that, although the claimant's impairment prevents him from working with small objects and reading small print, the claimant's past relevant work as a waiter did not require the performance of activities precluded by these limitations. Therefore, the ALJ ruled that the claimant's impairment does not prevent the claimant from performing his past relevant work, and he does not have a disability as defined in the Act.

The evidence submitted at the hearing before the ALJ indicates that the claimant had cataracts removed from both eyes sometime in 1981. Apparently, the claimant had cataract surgery on his right eye in April 1981. The medical evidence is more complete as to the cataract surgery on the claimant's left eye, which occurred in December 1981. He was discharged after that surgery with a prognosis of "good." (Tr. 97.) Dr. Luis Vazquez, who performed the surgery, reported that, three months later, the claimant's visual acuity with correction was 20/20 for each eye. (Tr. 101–103; 127.) Dr. Vazquez' report, dated October 27, 1986, states that the claimant had been fitted with contact lenses which he apparently tolerated well, that the last time that Dr. Vazquez had examined the claimant was in April 1983 and that at that time the claimant was using contact lenses with good vision and without problems. (Tr. 127.) An ophthalmology evaluation conducted by Dr. Valeriano Alicea Cruz on April 21, 1986 reported the claimant's vision after correction as 20/60 for the right eye and 20/30 for the left eye. (Tr. 115–16.) The remainder of the evaluation reported essentially normal findings, except for "mild pigmentary disruption in macular[3] area" of the fundus[4] of the right eye. (*Id.*) The diagnosis was bilateral surgical aphakia in good order and mild maculopathy in the right eye and the prognosis was good. (*Id.*) The evaulation noted that the claimant "is happy using extended wear soft lens" in each eye. (*Id.*)

The claimant testified at the hearing to the following. He has difficulty seeing in low light such as to write orders. Bright sunlight also bothers his eyes. He has problems with his contact lenses moving when in place. He gets infections from his lenses but does not see very clearly even when there is no infection. He also wears glasses which have thick lenses and which give him problems when walking down steps. (Tr. 32–41.) In a written report, the claimant stated that he takes long walks, can read if there is considerable light, and can drive by day on good roads for short distances. (Tr. 70.)

Dr. Victor Diaz Bonet, an ophthalmologist, testified as a medical advisor at the hearing. Dr. Diaz reviewed the record and

1. Absence of the lens of the eye; it may occur congenitally or from trauma, but is most commonly caused by extraction of a cataract. The Sloane–Dorland Annotated Medical–Legal Dictionary 44 (1987).

2. Dimness of vision without detectable organic lesion of the eye. The Sloane–Dorland Annotated Medical–Legal Dictionary 21 (1987).

3. Macula retinae is "an irregular yellowish depression on the retina, about 3 degrees wide, lateral to and slightly below the optic disk." The Sloane–Dorland Annotated Medical–Legal Dictionary 428 (1987).

4. The back portion of the interior of the eyeball, as seen by means of the ophthalmoscope. The Sloane–Dorland Annotated Medical–Legal Dictionary 303 (1987).

heard the claimant's testimony. Dr. Diaz testified that the claimant appears to have good vision for a person who had cataract surgery. No damage was reported in the ocular system aside from the cataract surgery. The claimant's impairment does not meet the listing for sensory disability in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.00 *et seq.* Difficulty in adjusting to the thick lenses on the eyeglasses is common, such as problems in depth perception in descending stairs while wearing them, but that the majority of people manage to overcome this "series of inconveniences." Dr. Diaz testified that with the remaining vision that the claimant has, as reported in the examinations, and using contact lenses, the claimant should not be having the problems he related. Although a person who has cataract surgery always develops sensitivity toward light, he would not expect a person with surgery and subsequent examination results like the claimant to have a serious problems with light sensitivity, and based on the record reports, the claimant should not have any greater difficulty in seeing at night than during the day. (Tr. 41–46; 49–50.)

A vocational expert (VE) also testified at the hearing. The VE reviewed the claimant's file and heard the claimant's testimony. The VE described the job of waiter as semi-skilled, requiring fine manipulation of fingers, being able to talk with people, manipulate and reach objects, bend over, walk and stand most of the time, and is usually performed indoors, although if a particular restaurant has an outside terrace, a waiter would be expected to serve there as well. The VE concluded that the claimant could perform his past relevant work as a waiter or an equivalent type of work such as helping in the bar, as a busboy, or, since the claimant had substantial years of experience, as a table captain who receives the restaurant patron. (Tr. 46–49.)

■ On appeal, the claimant argues that the testimony of the medical advisor is entitled to less weight than the reports of the examining physicians. The claimant cites this circuit's case of *Browne v. Rich-*

*ardson*, 468 F.2d 1003, 1006 (1st Cir.1972), which concluded that the report of a nonexamining medical advisor, who does not testify at the hearing before the ALJ, while admissible, cannot itself alone constitute the substantial evidence needed to support the Secretary's finding of nondisability. The claimant's argument is misplaced for several reasons. First, the medical advisor in this case did, in fact, testify and was subject to cross-examination. Second, we have stated that whether the testimony of a medical advisor who reviews the record and testifies at the hearing can itself alone constitute substantial evidence varies with the circumstances, including the nature of the illness and the information provided to the advisor. *Guzman Diaz v. Secretary of Health, Education and Welfare*, 613 F.2d 1194, 1199 n. 7 (1st Cir.1980). Third, it is evident that the Secretary's finding of nondisability was not based solely on the medical advisor's testimony. Fourth, and perhaps most significantly, the opinion of the medical advisor was completely consistent with the opinions of the examining physicians. All physicians essentially reported that the claimant had good results from his cataract surgery and that his prognosis was good. No report contained the slightest hint of a medical opinion indicating that the claimant's impairment would preclude him from substantial gainful activity as defined in the Act. The claimant's argument, therefore, that the medical advisor's testimony deserves "less weight" is unfathomable and, unfortunately, appears to have been made without thought to the actual facts of this case.

■ The claimant also faults the medical advisor's testimony as failing to explain how the claimant does not meet the listing of sensory impairments, such as 20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.04:

Loss of visual efficiency. Visual efficiency of better eye after best correction 20 percent or less. (The percent of remaining visual efficiency = the product of the percent of remaining central visual efficiency and the percent of remaining visual field efficiency.)

First, we note that it is the claimant's burden to show that he has an impairment or impairments which meets or equals a listed impairment in Appendix 1. *Dudley v. Secretary of Health and Human Services*, 816 F.2d 792, 793 (1st Cir.1987). If the claimant believes that the medical advisor's opinion as to whether the claimant meets a listed impairment is deficient in supporting explanation, we believe that encompassed within this burden is an obligation by the claimant to probe the basis for the medical advisor's conclusion at the time of his testimony. The claimant had the opportunity at the hearing to question the medical advisor as to the basis for his opinion that the claimant's impairment did not meet the requirements of a listed impairment in Appendix 1. He did not do so. We are not favorably disposed towards one who remains silent when he had the opportunity (and the burden) to inquire and then faults the medical advisor for failure to explain his testimony. Moreover, even on appeal, the claimant presents no substantive argument indicating how he, allegedly, does meet a sensory impairment as listed in Appendix 1. In any event, in light of the medical evidence, to which the medical advisor referred to in his testimony, all of which categorized the claimant's remaining visual acuity after surgery as good, and the medical advisor's testimony that the examinations evidenced an "almost normal" field of vision, we are not persuaded that the medical advisor failed to explain his testimony so as to warrant remand or reversal.

The claimant also challenges the testimony of the VE. After the VE was sworn and his qualifications as a vocational expert accepted, the following interchange between the ALJ and the VE occurred:

ALJ: ... Did you read the file?

VE: Yes, I read the whole thing.

ALJ: And you heard the claimant's testimony and that of the doctor?

VE: Yes, I heard them both.

ALJ: Aha, what is your opinion of this man being able to perform his past job or another one in the national economy, considering his age, his education and his work experience and give me your basis for them [sic].

The claimant criticizes this last quoted question as "fail[ing] to include all characteristics applicable to the [claimant] if supported by evidence of record." Brief at 13. The criticism apparently suggests that the ALJ may not refer to the entire file and the testimony in general when soliciting the VE's opinion but rather must pose a hypothetical question which lists in a delineated fashion specific characteristics of the claimant and his impairment. As a broad proposition, this criticism may have some validity. In cases where the medical evidence is voluminous and conflicting, it may be unreasonable to assume that a VE is able to remember all of a claimant's impairments simply by being referred to the record, *see Whitmore v. Bowen*, 785 F.2d 262, 263–64 (8th Cir.1986), and the ALJ must determine what evidence he credits in order to pose a hypothetical which will be relevant and helpful. *See Arocho v. Secretary of Health and Human Services*, 670 F.2d 374, 375 (1st Cir.1982). Whatever the validity of the criticism in general, however, (a point we need not determine here), we find no fault with the question as phrased by the ALJ in this case. The medical record was relatively limited. It dealt substantially with only one claimed impairment,[5] the claimant's vision, and the evidence was completely consistent. The record was not so large and/or ambiguous

---

5. The ALJ also concluded that an x-ray study indicated that the claimant has bilateral nephrolithiasis. Nephrolithiasis is a condition marked by the presence of renal calculi (an abnormal concretion occurring within the kidney and usually composed of mineral salts). Dorland's Illustrated Medical Dictionary 237, 989 (24th ed. 1965). There was no evidence of any deterioration of the claimant's renal function. There is substantial evidence to support the ALJ's conclusion that the claimant was not disabled by this condition, alone or in combination with his visual impairment.

Although in his request for a hearing, the claimant alleged that he was unable to work due to his physical and *mental* conditions (Tr. 61), the ALJ correctly found the evidence of a mental disability to be deficient, and the claimant does not press this allegation on appeal.

that any attempt by the VE to synthesize all the evidence would be so obviously unwieldy and would yield an inherently unreliable response. Moreover, if the claimant found the question as phrased inadequate, he should have posed his own hypothetical. We note that, although given the opportunity, the claimant had no questions for the VE at all.

█ Finally, the claimant claims that it is inconsistent for the ALJ to conclude that the claimant is precluded from performing jobs which entail very good vision, such as working with small objects or reading small print, and yet can do his past relevant work as a waiter. The claimant asks this court to take judicial notice that waiters must read menus, sometimes in low light, write orders, and read and process credit cards. Assuming that it is appropriate for us to take judicial notice of these facts and, further, that these facts demonstrate that a waiter with the limitations as accepted by the ALJ would be unable to perform these usual tasks, the claimant's argument is, nonetheless, unavailing. The claimant must show that he cannot perform his past *type* of work. *Pelletier v. Secretary of H.E.W.*, 525 F.2d 158, 160 (1st Cir.1975). The VE testified, with justification we believe, that the occupation of "waiter" includes busboy and table captain and that, based on the record evidence, the claimant, even with his limitations, could perform the type of work encompassed within the category of waiter.

We have considered the remainder of the claimant's arguments on appeal and find them meritless and unwarranting of further discussion.

AFFIRMED.