915 F.2d 1556
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Angel DIAZ SERRANO, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 89-2012.
 United States Court of Appeals, First Circuit.
 July 19, 1990.
 
 Appeal From The United States District Court For The District Of Puerto Rico Hector M. Laffitte, District Judge.
 Juan A. Hernandez Rivera and Raymond Rivera Esteves on brief, for appellant.
 Daniel F. Lopez Romo, United States Attorney, Donald A. Gonya, Chief Counsel for Social Security, Randolph W. Gaines, Deputy Chief Counsel for Social Security, A. George Lowe, Deputy Chief Counsel for Disability Litigation Branch and Ramona Bell-Pearson, Attorney, Office of the General Counsel, Social Security Division, Department of Health and Human Services on brief, for appellee.
 D.P.R. [APPEAL AFTER REMAND, 831 F.2d 281.]
 AFFIRMED.
 Before TORRUELLA, SELYA and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 Angel Diaz Serrano appeals from a district court judgment affirming a decision by the Secretary of Health and Human Services to deny his application for Social Security disability benefits. We find substantial evidence in the record in support of the Secretary's determination and therefore affirm.
 
 I.
 
 2
 Diaz, now 36 years old, has been troubled by back problems for half his life. His relevant medical history can be divided into two separate time periods. Diaz fractured his spine in a fall in 1972 and underwent disc surgery in 1975. Despite two years of subsequent hospital treatment, he continued to suffer some residual pain, radiculopathy, and limitation of movement. As a result of these impairments, he was awarded disability benefits from February 1974 through the end of February 1983. Diaz did not challenge the cessation of such benefits, which followed an administrative determination that he was no longer disabled.
 
 
 3
 Instead, on January 9, 1984, he reapplied for benefits on account of the same "back" and "disc" ailments. While February 1974 was initially listed as the onset date, this was later changed by stipulation to March 1, 1983--the date on which his earlier-awarded benefits terminated. On January 28, 1984, some three weeks after his new application, Diaz refractured his spine in a second fall, necessitating a ten-day hospital stay and several months of follow-up treatment. His insured status expired on September 30, 1984, and he returned to work in January 1988. At issue therefore is whether he is entitled to benefits from March 1983 to January 1988, based on an alleged disability arising at some point between March 1983 and September 1984.
 
 
 4
 The medical evidence presented below pertains exclusively to Diaz's recovery from his fall in January 1984. Diaz arrived at the hospital complaining of back pain and loss of movement and sensitivity in his legs. The spinal fracture was treated conservatively with medication and bed rest; no surgery was performed. Although straight leg raising was limited, no motor or sensory deficit was found. A myelogram revealed two congenital conditions: dextroscoliosis (a lateral deviation in the spine's vertical line), and dysplastic (abnormal) changes in the T12-S1 vertebrae. Upon discharge, Diaz was prescribed analgesics and bed rest, and was scheduled to visit an orthopedic clinic on an outpatient basis. Clinic notes from February and March 1984 report complaints of back and leg pain, for which medications were prescribed.
 
 
 5
 The remaining medical evidence consists of the reports of three consulting physicians. Dr. Arturo Cadilla, an orthopedic specialist, examined Diaz and submitted a report on March 12, 1984. He found that Diaz's right leg was 1 1/4 inches shorter than the left. Neurological findings disclosed hypoesthesia (abnormally decreased sensitivity) of the left leg and foot and weak dorsiflexion of the foot. Restrictions on bending from the waist and straight leg raising were observed: Diaz could bend 40 degrees, and could raise his right leg 45 degrees and his left leg 35 degrees. Dr. Cadilla concluded that Diaz suffered from "chronic left L-4, L-5 nerve root irritation and compression" and was not fit "to perform any type [of work] in which bending, lifting, kneeling, squatting or prolonged walking or standing activities are needed."
 
 
 6
 Two physicians thereafter prepared Residual Functional Capacity ("RFC") Assessments based on their review of the medical records. On March 21, 1984, Dr. Rafael Arroyo Vicente, an orthopedist, reported that Diaz could lift up to twenty pounds (ten frequently), could stand or walk a maximum of four hours per eight-hour day, could sit for six hours, and could kneel, crouch and crawl occasionally. Dr. Angel W. Hernandez, a neurologist, submitted an updated RFC evaluation on May 22, 1984. His findings echoed those of Dr. Arroyo, except that he considered Diaz able to stand or walk only two hours per workday "due to severe weakness [in his] left foot." Dr. Hernandez indicated that he consulted with Dr. Cadilla and learned that the weakness in Diaz's left foot was "severe," requiring the use of a cane "for ambulation."[1]
 
 II.
 
 7
 This is our second review of Diaz's case. His claim was initially denied, at both the administrative and district court level, on the ground that his impairment was not "severe" within the meaning of 20 C.F.R. Sec. 404.1520(c). On September 16, 1987, we vacated this determination due to insufficiency of the evidence and remanded for further proceedings. The Administrative Law Judge ("ALJ") this time denied Diaz's claim at step five of the sequential analysis. Id. Sec. 404.1520(f); see, e.g., Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6-7 (1st Cir.1982) He determined that Diaz's back impairment imposed various exertional limitations. Emphasizing the two RFC assessments, and discounting Diaz's testimony as to ongoing, severe back pain, the ALJ specifically found that he was unable to bend or climb, walk or stand for over six hours, sit for over six hours, or lift or carry over twenty-five pounds. Because of the bending restriction, Diaz was deemed incapable of performing his past relevant work as a machine operator. He was nonetheless found to have the residual capacity to perform nearly the full range of light work.[2] No nonexertional restrictions were involved. Accordingly, given Diaz's vocational factors ("younger" age; "limited" education; "unskilled" work experience), Rule 202.17 of the Medical Vocational Guidelines was invoked which yielded a finding of not disabled. 20 C.F.R. Sec. 404, Subpart P, App. 2. The Appeals Council and the district court each subsequently endorsed this decision.
 
 III.
 
 8
 Diaz raises a single issue on appeal. He argues that the ALJ, in assessing Diaz's residual functional capacity, improperly placed exclusive reliance on the reports of the two nonexamining physicians (Arroyo and Hernandez) while ignoring the contrary opinion of the one physician who examined him (Cadilla). He contends that the reports of nonexamining, nontestifying[3] physicians cannot by themselves constitute substantial evidence, at least in the face of contrary findings by an examining physician, and that the decision below therefore lacks sufficient record support. We find this argument unavailing under the circumstances.
 
 
 9
 It is true that in Browne v. Richardson, 468 F.2d 1003 (1st Cir.1972), we held, on the facts there presented, that the written report of a nonexamining, nontestifying physician "cannot be the substantial evidence needed to support a finding." Id. at 1006. Such a rule, however, is not a hard-and-fast one. See Tremblay v. Secretary of Health and Human Services, 676 F.2d 11, 13 (1st Cir.1982). The weight to which such an advisory report is entitled "will vary with the circumstances, including the nature of the illness and the information provided the expert." Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 223 (1st Cir.1981). Here, the relevant factors affecting the evidentiary value of the two RFC assessments pull in both directions. On the one hand, both Dr. Arroyo and Dr. Hernandez had access to the complete medical record, including the report of Dr. Cadilla; Dr. Hernandez even consulted with Dr. Cadilla by telephone. Their respective qualifications are undisputed. And the fact that they reached substantially identical results further adds to the value of those results. On the other hand, Drs. Arroyo and Hernandez each limited themselves to checking boxes on a prepared form denoting levels of functional capacity; little in the way of elaboration or subsidiary medical support was provided. Moreover, assessing the severity of Diaz's back pain, and the functional restrictions imposed thereby, was quite clearly the type of determination that could more reliably be made through personal examination.
 
 
 10
 Diaz contends that the two RFC evaluations were directly contradicted by the report of Dr. Cadilla, the examining physician. He also suggests that those evaluations provided the sole evidentiary basis for the ALJ's decision here. In light of the factors just outlined, we would find the result below problematic were these two assertions accurate. We read the record differently, however, in both respects.
 
 
 11
 In arguing that the findings of Drs. Arroyo and Hernandez are in "direct contradiction" to those of Dr. Cadilla, Diaz overstates the case. While he fails to identify the specific findings to which he refers in this regard, he presumably means to focus on the assessments of his lifting capacity--the physical factor of most immediate relevance here. The two RFC reports found that Diaz could lift or carry twenty pounds occasionally and ten pounds frequently; Dr. Cadilla by contrast opined that he was not fit "to perform any type [of work] in which ... lifting ... [is] needed." The extent of disagreement between these separate pronouncements is unclear. Dr. Cadilla did not prepare an RFC form or otherwise quantify the degree to which Diaz's lifting capacity was impaired. It is possible he meant that the occasional lifting of even twenty pounds, or even less,[4] was precluded. We cannot say, however, that his conclusory statement is necessarily inconsistent with a finding of such residual capacity. In this respect, the instant case is analogous to Gray v. Heckler, 760 F.2d 369 (1st Cir.1985), where the reports of the examining physicians were "generally inconclusive, but [did] not necessarily contradict" that of the nonexamining consultant. Id. at 373.
 
 
 12
 In determining that Diaz retained the capability to perform light work, moreover, the ALJ relied on more than the two RFC assessments. The hospital notes indicate, for example, that the conservative regimen of treatment succeeded in lessening his back pain. Even more telling, however, is what is not in the record. Diaz never challenged the determination that he was no longer disabled as of the end of 1982. The date ultimately selected to mark the onset of his claimed new disability--March 1, 1983--corresponded not to any medical occurrence but rather to the termination of his benefits. Between that date and the start of his hospitalization on January 28, 1984, there is no evidence of medical treatment. And following his hospital stay and the several months of follow-up care, the record is again silent as to any treatment being received, or any change in medical condition occurring, straight up through his return to work in January 1988. These circumstances reinforce the other record evidence in support of the ALJ's determination.
 
 
 13
 For these reasons, we affirm the judgment of the district court.
 
 
 
 [1]
 The record also contains a "Medical Consultant's Review of Residual Functional Capacity Assessment" dated April 4, 1984. The author of this review (whose name is illegible) simply reports his agreement with the RFC findings reached by Dr. Arroyo. As the parties and the ALJ made no mention of this report, and as it is merely cumulative of the other RFC assessments, we shall not refer to it further
 
 
 [2]
 Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. Sec. 404.1567(b)
 
 
 [3]
 No physician testified at either of the administrative hearings
 
 
 [4]
 We note that Grid Rule 201.24 would direct a finding of not disabled even if Diaz were deemed capable only of lifting ten pounds at a time, i.e., of performing only sedentary work. See 20 C.F.R. Sec. 404.1567(a)