915 F.2d 1557
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Monserrate RODRIGUEZ-TORRES, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 90-1064.
 United States Court of Appeals, First Circuit.
 Sept. 18, 1990.
 
 Appeal from the United States District Court for the District of Puerto Rico Carmen C. Cerezo, District Judge.
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief, for appellant.
 Daniel Lopez Romo, United States Attorney, Donald A. Gonya, Chief Counsel for Social Security, Randolph W. Gaines, Deputy Chief Counsel for Social Security, A. George Lowe, Deputy Chief Counsel for Disability Litigation and Donald H. Romano, Office of the General Counsel, Social Security Division, Department of Health and Human Services on brief, for appellee.
 D.P.R.
 AFFIRMED.
 Before BREYER, Chief Judge, and LEVIN H. CAMPBELL and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant Monserrate Rodriguez Torres filed an application for Social Security disability benefits on December 5, 1984 alleging disability due to a prostate/scrotal condition. After the Secretary denied the application at step 2 of the sequential evaluation process, 20 C.F.R. Sec. 404.1520(c), and the district court affirmed the Secretary, claimant appealed to this court. In the meantime, claimant on November 14, 1985 filed a second application for Social Security disability benefits alleging a prostate/scrotal condition, a back problem, and nerve problems. After the Secretary denied this second application at step 4 of the sequential evaluation process, 20 C.F.R. Sec. 404.1520(f), on the ground that claimant's impairments did not prevent him from performing his past work as a salesman, claimant appealed to the district court.
 
 
 2
 While these two appeals were pending, the Secretary, with claimant's concurrence, moved this court and the district court to remand these two appeals so that they could be consolidated for further administrative proceedings. Both motions were granted. The Appeals Council then consolidated the two cases and remanded them to an Administrative Law Judge (ALJ) with directions that vocational testimony be taken. The ALJ held a hearing on December 10, 1987 for this purpose. On January 22, 1988 the ALJ found claimant not disabled at step 4 of the sequential evaluation process, 20 C.F.R. Sec. 404.1520(f), on the ground that claimant's impairments did not prevent him from performing his past work as a salesman. After the Appeals Council denied claimant's request for review of the ALJ's decision, claimant appealed to the district court, which affirmed the Secretary. Claimant appeals, contending that the Secretary's decision is not supported by substantial evidence. We affirm.
 
 
 3
 Claimant introduced undisputed evidence that his former job as a salesman required no lifting and carrying, seven hours walking, two hours sitting, two hours standing, and bending and reaching occasionally. At the December 10, 1987 hearing, the ALJ posed to a vocational expert a hypothetical assuming that claimant suffered from a severe lumbar spondylosis condition but had a residual functional capacity to perform jobs that involve walking six or seven hours and standing six hours and do not involve lifting weights in excess of twenty or twenty-five pounds, pushing, pulling, climbing balancing, or squatting. The vocational expert testified that a claimant with such a condition would not be precluded from work as a salesman. The ALJ accepted this testimony and found claimant not disabled.
 
 
 4
 The record contains only two assessments of claimant's residual functional capacity to shed light on his ability to meet the functional requirements of the salesman job. Dr. Fontanez, a neurologist who examined claimant on three occasions, diagnosed left sciatic neuralgia, lumbosacral myositis, and status post repair of left inguino scrotal hernia. He concluded that claimant "cannot lift, carry or push any object heavier than 10 pounds. He cannot bend repetitively. He cannot remain in the standing or sitting position for more than one hour. He cannot walk for more than one hour. He cannot climb, squat or perform repetitive movements with his left lower extremity. His labor prognosis is poor." Because Dr. Fontanez found such severe limitations on claimant's ability to walk, stand, and sit, Dr. Fontanez' assessment would not permit claimant to perform his former work as described by claimant.
 
 
 5
 The other residual functional capacity assessment in the record was submitted by Dr. Anduze, a consulting neurologist, who neither examined claimant nor testified at a hearing. Based on his review of the medical evidence, Dr. Anduze found that, although claimant suffered from a back condition, claimant retained the residual functional capacity to lift fifty pounds and twenty-five pounds frequently, stand, walk, or sit six hours (the maximum length of time provided on the residual functional capacity assessment form filled out by Dr. Anduze), push and pull to a limited extent, and climb, balance, stoop, kneel, crouch, and crawl occasionally, with no limitations on reaching, handling and fingering and no environmental restrictions. Dr. Anduze's assessment would support the finding that claimant could perform work as a salesman.
 
 
 6
 Claimant contends that the record lacks substantial evidence to support the ALJ's finding that claimant retained the functional capacity to perform the salesman job. Given Dr. Anduze's assessment, we presume that the substance of claimant's contention is an underlying assertion, not explicitly argued by claimant, that the report of a non-examining, non-testifying physician cannot by itself constitute substantial evidence. There was no other medical assessment of residual functional capacity in the record that would support the ALJ's determination. And, the ALJ was not qualified to assess residual functional capacity himself based on bare medical findings. See, e.g., Perez Lugo v. Secretary of Health and Human Services, 794 F.2d 14, 15 (1st Cir.1986). Consequently, the argument would run, there was a lack of substantial evidence to support the ALJ's functional conclusion that claimant's exertional impairments would allow him to work as a salesman.
 
 
 7
 It is true that in Browne v. Richardson, 468 F.2d 1003 (1st Cir.1972), we held, on the facts of that case, that the report of a non-examining, non-testifying physician "cannot be the substantial evidence needed to support a finding." Id. at 1006. Our later decisions demonstrate, however, that this is not an absolute rule. See Tremblay v. Secretary of Health and Human Services, 676 F.2d 11, 13 (1st Cir.1982) (affirming the Secretary's adoption of the findings of a non-testifying, non-examining physician, and permitting those findings by themselves to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability). To the contrary, an advisory report such as that submitted by Dr. Anduze is entitled to evidentiary weight, which "will vary with the circumstances, including the nature of the illness and the information provided the expert." Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 223 (1st Cir.1981). In a related context we have held that the testimony of a non-examining medical advisor--to be distinguished from the non-testimonial written reports in the instant case--can alone constitute substantial evidence, depending on the circumstances. Rodriguez v. Secretary of Health and Human Services, 893 F.2d 401 (1st Cir.1989); Torres v. Secretary of Health and Human Services, 870 F.2d 742, 744 (1st Cir.1989); Guzman Diaz v. Secretary of Health, Education and Welfare, 613 F.2d 1194, 1199 n. 7 (1st Cir.1980).
 
 
 8
 We find that the circumstances of this case warrant affirming the Secretary's acceptance of Dr. Anduze's findings as substantial evidence of claimant's residual functional capacity, even in the face of contrary findings by an examining physician. It would appear that Dr. Anduze had before him most, if not all, of the medical evidence of record when he reached his conclusions. Claimant has not suggested otherwise. Furthermore, Dr. Anduze's report contains more in the way of subsidiary medical findings to support his functional conclusions than is often found in the reports of consulting, non-examining physicians. Such reports often contain little more than brief conclusory statements or the mere checking of boxes denoting levels of residual functional capacity, and accordingly are entitled to relatively little weight. Here, by contrast, Dr. Anduze stated medical conclusions about claimant's back condition: "Has mild muscle spasm over L-5 area & [limited range of motion] & tenderness. X-ray: There are diffuse degenerative changes throughout lumbar spine & generalized small anterior spurs. L4-L5 disc is not significantly narrowed but there is sclerosis of adjacent vertebral end plates & small posterior spurs. Sclerotic changes are also seen at L5 neural arch." In his discussion of X-ray results Dr. Anduze was referring to findings submitted by Dr. Davila, a radiologist, following an X-ray examination of claimant conducted on April 25, 1986. Dr. Anduze's report suggests that he did review the medical file with some care. His medical findings are fully consistent with the findings submitted by Dr. Marrero, a consulting, examining neurologist.
 
 
 9
 Dr. Fontanez' reports, by way of comparison, also provide medical findings to support Dr. Fontanez' functional conclusions. The ALJ, however, made it clear why he was not inclined to assign controlling credibility to Dr. Fontanez' report. The ALJ stated,
 
 
 10
 As usual in Dr. Fontanez' reports, when evaluating patients for this law firm, he paints a picture of severity found nowhere else in the medical record and never resorts to electrodiagnostic tests, so vital in cases involving back impairments. He is not a treating physician in this case, since he has only seen the patient on three occasions, i.e., on May 13, 1985, January 8, 1986 and March 17, 1986, he has not recommended physiotherapy or any other type of aggressive management.
 
 
 11
 It is certainly within the Secretary's province to decide, in a particular case, to accord more or less credibility to a doctor's report based on the presence of absence of electrodiagnostic or other tests to support medical findings.
 
 
 12
 The ALJ also inferred that Dr. Fontanez was not the treating physician and ascribed, from other courtroom encounters, a tendency to paint a picture of severity found nowhere in the medical record. Obviously we cannot "review" for substantial evidence the ALJ's judgment, based on past experience not in the record, about the credibility of this physician. Nonetheless we believe that this is the kind of adjudicatory expertise that the Secretary is intended to develop and use under the Act. Thus, although in the usual case we might hesitate to permit the Secretary to rely solely on the functional conclusions of a non-examining, non-testifying physician in the face of contrary functional testifying physician in the face of contrary functional findings by an examining physician, the ALJ's special reasons for doubting the examining physician's findings make this an unusual case. See Tremblay, supra, 676 F.2d 11 (Secretary could credit findings of non-examining physician over findings of examining physician where special factors--the conclusory nature of the latter's findings, the fact that the medical condition was alleged to have existed many years before, and the lack of other medical evidence of disability at that earlier time--cast doubt on the latter's credibility).
 
 
 13
 Ordinarily we might conclude that, given claimant's allegations of disabling back pain, a marked preference for the opinion of an examining physician would be particularly appropriate. The subjective severity of a claimant's pain is better evaluated through on-the-spot examination and observation than on a cold medical record. See Rodriguez, supra, 647 F.2d at 223 (one relevant factor is "the nature of the illness"). In this case, however, the ALJ's stated reasons for disbelieving the examining physician, as discussed above, substantially mitigate that preference. Accordingly, we find that, under all the circumstances of this case, the ALJ was permitted to rely on the functional conclusions of Dr. Anduze in determining that claimant could perform his past work.
 
 
 14
 Turning specifically to claimant's allegations of disabling pain, the ALJ had a substantial basis for disbelieving those allegations. In addition to Dr. Fontanez' report and the consistent medical findings of Dr. Marrero, a consulting neurologist, claimant was described by a Social Security Administration interviewer as able to answer all questions in full, with no difficulty observed during the interview, which claimant attended alone. Furthermore, as the ALJ noted, the record is replete with discrepancies in claimant's account of his history and activities. The ALJ stated,
 
 
 15
 The medical picture in this case is quite puzzling. Whereas at the second hearing the claimant alleged back pain and left leg numbness as a result of surgery in October 1984, when he filed for benefits on December 5, 1984 he failed to mention leg troubles in his application. He alleged his back aches began after surgery, but he claimed pains all over body by August 2, 1984. In the first hearing he denied any traumatic episode, but in the second one he claimed a fall where he injured his left testicle.
 
 
 16
 At a January 12, 1987 hearing claimant stated that he could not read, did not have a driver's license and had never driven. Yet in a disability report and in that same hearing he stated that he liked to read newspapers. At an August 6, 1985 hearing he stated that he drove for about ten years while in Connecticut. Dr. Gayalde, a consulting neurologist, stated in a December 14, 1985 medical report that claimant "came to evaluation alone in a friends car." Accordingly, the ALJ was entitled to doubt claimant's credibility and discount his claims of back pain so severe in intensity as to preclude work as a salesman. We add that, contrary to claimant's contention, the ALJ's report shows that he did give adequate consideration to claimant's subjective complaints of pain and did consider non-medical evidence of pain as required by Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir.1986).
 
 
 17
 Finally, we agree with the ALJ that the record contains no evidence of a severe mental impairment before September 30, 1986, when claimant's insured status expired.
 
 
 18
 The judgment of the district court is affirmed.