25 F.3d 1037
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Cruz L. GARCIA, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 93-2349
 United States Court of Appeals,
First Circuit.
 June 1, 1994.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge ]
 Helen E. M. Briganti on brief for appellant.
 Guillermo Gil, United States Attorney, Maria Hortensia Rios, Assistant United States Attorney, and Thomas D. Ramsey, Assistant Regional Counsel, Department of Health & Human Services, on brief for appellee.
 D. Puerto Rico
 AFFIRMED.
 Before Selya, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 The claimant, Cruz L. Garcia, appeals from a district court judgment affirming a decision of the Secretary of Health and Human Services denying her application for disability insurance benefits. For the reasons stated below, we affirm.
 
 I.
 
 2
 Claimant was born on June 16, 1933. She completed high school and has one year of college education. Between 1976 and 1982, she worked for the Commonwealth of Puerto Rico as a revenue officer. Prior to that, she worked for eighteen years as a disbursement clerk. She stopped working on December 31, 1982, at age forty-nine, "because her nervous condition became so terrible." She has not worked since then. On her last insured date, December 31, 1987, she was age fifty-four.
 
 
 3
 On January 15, 1991, claimant filed an application for benefits alleging that she is disabled by a nervous condition, herniated disk, pinched nerves, asthma, and fibrositis in her hands. She alleged an onset date of December 31, 1982.[1] She claimed that her doctors had told her not to perform household tasks because of her herniated disc, as well as her pinched nerve condition. She also claimed that she does not go outside the home unescorted due to her mental condition, that her husband does the housework, and that she goes to church once or twice a week. The Social Security Administration denied claimant's application initially and on reconsideration.
 
 
 4
 Claimant obtained a hearing before an Administrative Law Judge (ALJ) on December 2, 1991. She was represented by an attorney. In addition to the claimant, a vocational expert (VE) testified.
 
 
 5
 At the hearing, claimant testified that she ceased working at the end of 1982 because her nervous condition rendered her unable to follow instructions or remember procedures. This nervous condition, she testified, has worsened since 1984. According to the claimant, she gets lost when she is outside the home unescorted, and she suffers from feelings of sadness, migraine headaches, crying spells, and suicidal impulses. She also testified that she has back pain which forces her to depend upon her husband for most chores and is only relieved when she lies down. Although she takes pain medication, it does not provide full relief. She testified that she cannot sit for more than one half hour at a time without needing to change her position. Claimant also complained of asthma and mentioned operations that she has had on her arms for pinched nerves.
 
 
 6
 The VE identified claimant's former jobs as skilled, light work (revenue officer) and semi-skilled, sedentary work (disbursement clerk). The ALJ posed a hypothetical to the VE which assumed that claimant, at the time she was last insured, had various moderate mental limitations and was capable of light work, with the restriction that she needed to be able to alternate positions at will.[2] These mental limitations included moderate limitations in her capacity to understand, remember, and carry-out detailed instruction, as well as in her capacity to maintain concentration for extended periods of time. The VE testified that claimant's moderate mental limitations limited her to unskilled work. He then identified three jobs that claimant could have performed-final examiner in the electronics industry, stamper in electronics, and electric cord cutter-which existed in significant numbers in the national and local economy through December 31, 1987. These jobs, the VE testified, permit alternation of positions at will. The VE also testified that if claimant's subjective allegations were completely credible, she could not have performed these or any other job on a sustained basis.
 
 
 7
 The ALJ found that although claimant has a combination of mental and back conditions, as well as bilateral compression of ulnar nerve and carpal tunnel syndrome, claimant did not have an impairment or combination of impairments equivalent to one of the listed impairments prior to the expiration of her insured status. He also found that claimant was unable to perform her past work. However, the ALJ concluded that claimant, prior to the expiration of her insured status, had the residual functional capacity for light, unskilled work, with the additional limitation that she needed to be able to alternate positions occasionally. Finally, the ALJ ruled that, based on the testimony of the VE and application of the Grid, claimant was not disabled at step five of the sequential analysis because there were jobs in the economy that she could have performed through December 31, 1987.
 
 
 8
 The Appeals Council denied review. An appeal was taken to the district court. The district court accurately summarized the medical records. It found that the decision of the Secretary is supported by substantial evidence and affirmed the denial of benefits. This appeal followed.
 
 II.
 
 9
 Claimant contends that the ALJ erred at step three of the sequential evaluation in finding that her impairments did not meet or equal a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. In particular, she argues that (1) a determination of medical equivalency must be made by a physician, (2) the record contains no determination of medical equivalency by a physician who takes into account claimant's combined impairments, and (3) the ALJ's determination that her condition did not equal a listed impairment, made without the testimony of a medical expert at the administrative hearing, was error. Claimant also argues that the ALJ erred in failing to consider "the disease process of the [her] emotional and musculoskeletal impairments" and "the functional consequences and physical limitations which would be expected to occur as the disorder advance [sic]." We disagree.
 
 
 10
 We note, as a preliminary matter, that it is the claimant's burden to show that she has an impairment or impairments that meet or equal a listed impairment in Appendix 1. Torres v. Secretary of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989) (per curiam). Garcia does not state, in her brief, which listing she purportedly equals, much less present a substantive argument indicating how, allegedly, she equals a listed impairment. We add that the record contains determinations by a consulting psychologist and psychiatrist that her mental condition did not meet or equal a listed impairment through December 31, 1987. See 20 C.F.R. Sec. 404.1526(b) (stating that the Secretary will consider the medical opinion given by one or more designated consultants in determining medical equivalence). Under the circumstances, no testimony by a medical expert on this issue was necessary. Furthermore, because the record demonstrated that during the insured period, claimant's physical impairments were relatively mild and responded to treatment, the ALJ was not required to obtain a medical opinion which addressed whether claimant's combined impairments equalled a listing.
 
 
 11
 We also reject claimant's contention that the ALJ erred in failing to consider the likely progression of her impairments. A claimant is not entitled to disability benefits unless she can demonstrate that her disability existed prior to the expiration of her insured status. Cruz Rivera v. Secretary of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986) (per curiam), cert. denied, 479 U.S. 1042 (1987). It is not sufficient for a claimant to establish that her impairment had its roots before the date that her insured status expired. Rather, the claimant must show that her impairment(s) reached a disabling level of severity by that date. See, e.g., Deblois v. Secretary of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982). The ALJ properly focused on whether claimant's impairments met or equalled a listing through December 31, 1987, the date she was last insured.
 
 
 12
 Claimant also argues that the ALJ erred at step five of the sequential analysis. In particular, she contends that (1) the ALJ did not properly evaluate her claim of subjective pain; (2) the ALJ erred in not obtaining residual functional capacity assessments from her treating physicians, in addition to those obtained from the consultants; and (3) the ALJ could not properly conclude that she had the residual functional capacity to do light work in the absence of any assessment in the record of her capacity for stooping or crouching.
 
 
 13
 Contrary to claimant's allegations, the ALJ's evaluation of her complaints of pain comports with our decision in Avery v. Secretary of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986). Claimant was questioned regarding her daily activities, functional restrictions, medication, frequency and duration of pain, and precipitating and aggravating factors. See id. at 29. Although claimant testified that she has back pain which forces her to depend upon her husband for most chores and is only relieved when she lies down, she did not focus her testimony on the relevant insured period. Medical records from that period indicate that her occasional back and neck pain responded to treatment. A psychiatric evaluation indicates that in July 1987, just five months prior to the expiration of her insured status, claimant's daily activities included rising early, eating breakfast, cooking, washing, caring for her personal hygiene, and going out. We believe that the ALJ supportably credited claimant's allegations of disabling pain during the insured period only to the extent that they precluded medium or heavy exertion.
 
 
 14
 We also reject claimant's contention that the ALJ erred in not obtaining residual functional capacity assessments from her treating physicians, in addition to those obtained from the consultants. In Browne v. Richardson, 468 F.2d 1003, 1006 (1st Cir. 1972), we held that, on the facts of that case, a written report submitted by a non-examining, non-testifying physician could not alone constitute substantial evidence to support the Secretary's conclusion. Our later cases, however, demonstrate that this principle is by no means an absolute rule. Berrios Lopez v. Secretary of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (per curiam). Advisory reports such as those submitted by the consulting psychologist and psychiatrist here are entitled to evidentiary weight, which "will vary with the circumstances, including the nature of the illness and the information provided the expert." See id. (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 223 (1st Cir. 1981)). In the instant case, there is every indication that the consultants had available to them most, although not all, of the medical evidence for their review. Moreover, their conclusions that claimant suffers from moderate mental limitations, but could function in a simple, repetitive environment, were mutually reinforcing. In this context, we think the advisory reports were sufficient to support the Secretary's conclusion that claimant had the mental capacity to perform unskilled work. Cf. Tremblay v. Secretary of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982) (affirming the Secretary's adoption of the findings of a non- testifying, non-examining physician and permitting those findings by themselves to constitute substantial evidence in the face of a treating physician's conclusory statement of disability).
 
 
 15
 Claimant's remaining claimed error-that the record contains no assessment of her capacity for stooping and crouching-was not raised in the district court and so is not preserved for our review. See Gonzalez- Ayala v. Secretary of Health & Human Servs., 807 F.2d 255, 256 (1st Cir. 1986) (per curiam). Having reviewed the record, we are persuaded that the Secretary's decision denying claimant benefits is supported by substantial evidence. Accordingly, we affirm that decision.
 
 
 16
 Affirmed.
 
 
 
 [1]
 Claimant had applied for benefits once before, alleging the same onset date, and her application had been denied on May 14, 1984. The Administrative Law Judge believed that the Social Security Disability Benefits Reform Act of 1984 required him to consider evidence of claimant's mental condition from the alleged onset date. The district court held, however, that our decision in Mazzola v. Secretary of Health & Human Servs., 795 F.2d 222 (1st Cir. 1986) (per curiam) precluded any such redetermination, and that the ALJ should only have considered the period after May 14, 1984 for all of claimant's disabilities. Plaintiff has not challenged this ruling on appeal
 
 
 [2]
 The hypothetical also assumed that claimant was age forty-nine at onset of her alleged disabilities and age fifty-four on her last insured date; that she had one year of college education; that she had past, skilled and semi- skilled, work experience; and that she needed to work in an adequately ventilated environment, free of extremes in temperature, dust, and gas fumes